**WHITE AND WILLIAMS LLP**
Heidi J. Sorvino, Esq.
James C. Vandermark, Esq.
Jon T. Powers, Esq.
810 Seventh Avenue, Suite 500
New York, NY 10019
Tel: (212) 244-9500
Email: sorvinoh@whiteandwilliams.com
vandermarkj@whiteandwilliams.com
powerst@whiteandwilliams.com

*Proposed Counsel to IDL Communications and Electric, Inc*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 24–42613 (JMM) |
| IDL COMMUNICATIONS AND ELECTRIC, INC., | Chapter 11<br>(Subchapter V) |
| Debtor. | |

**APPLICATION PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE FOR AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF WHITE AND WILLIAMS LLP AS ATTORNEYS FOR THE DEBTOR *NUNC PRO TUNC* TO PETITION DATE**

IDL Communications and Electric, Inc. (the "**Debtor**"), as debtor and debtor-in-possession, by this application (the **"Application"**), respectfully seeks the issuance of an order substantially in the form attached hereto as **Exhibit A** to employ counsel pursuant to Section 327(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the **"Bankruptcy Code"**).

## PRELIMINARY STATEMENT

1. By this Application, the Debtor requests authority to retain and employ the law firm of White and Williams LLP (**"W&W"**), as counsel to the Debtor, *nunc pro tunc* to June 20, 2024 (the "**Petition Date**"), to perform the extensive legal services that will be required during these

Chapter 11 cases in accordance with W&W's normal hourly rates in effect when services are rendered W&W's normal reimbursement policies.

2. In support of this Application, the Debtor submits the declaration of James C. Vandermark, a partner of W&W, which is attached hereto as **Exhibit B** (the "**Vandermark Declaration**") and the *Declaration of Paul Vieira in Support of Debtor's Chapter 11 Petition and First Day Motions* [ECF No. 11] (the "**Vieira Declaration**").[1]

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtor's Chapter 11 case and this Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is 11 U.S.C. § 327 (a), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), and Rule 2014-1 of the E.D.N.Y. Local Bankruptcy Rules (the "**Local Rules**").

## FACTS

### A. Introduction

4. On the Petition Date, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Clerk of this Court. The Debtor continues to operate its business and manage its property as debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

5. The Debtor has chosen to proceed under Subchapter V of Chapter 11, and therefore no official committee of unsecured creditors has been or will be established unless the Court orders otherwise.

[1] Capitalized terms used herein but not defined shall have meaning ascribed to them in the Vieira Declaration.

**B. Background and Events Leading to Commencement of Chapter 11 Case**

6. The Debtor was established in 2001 and began as an installer of telecommunication and internet connectivity systems. Vieira Declaration, at ¶ 13. The Debtor operated successfully for many years, in part, as the result of becoming certified as a Minority-Owned Business Enterprise ("**MBE**") with the State of New York. *Id.* As an MBE, the Debtor became more visible to prospective buyers, including government agencies and private contractors seeking to purchase goods and services. *Id.*

7. In 2009, an individual with a master electrical license joined the Debtor, which enabled the Debtor to become a licensed electrical contractor. *Id.* at ¶ 14. With this licensure, the Debtor became eligible for contracts for planning, installing, and maintaining electrical equipment and systems. *Id.* However, most of the contracts that the Debtor received were subcontractor agreements with a PEC. *Id.* While these subcontractor agreements provided valuable experience, the nature of the relationships with PECs limited the profitability for the Debtor from these projects. *Id.*

8. Subcontractors working with a PEC generally are responsible for providing the labor for specific tasks on a project. *Id.* at ¶ 15. The PEC will often also provide labor on the project and handle the planning, oversight, and purchasing of electrical products and equipment. *Id.* A PEC generally has better profit margins not only because it likely takes a larger portion of the labor but also from the markup on the sale of products and equipment. *Id.* PECs also benefit from diversifying their revenue sources vis-à-vis the additional services and delivery of equipment for the project. *Id.* The profit from one aspect of a project can help to cover any budget overruns for another aspect of the project. *Id.* Conversely, subcontractors often only provide labor. *Id.* A

subcontractor does not have alternative revenue sources from any one project if its labor costs exceed its budget. *Id.* The subcontractor is simply left with a loss on the project. *Id.*

9. Prior to the COVID-19 pandemic, the Debtor would sometimes have a loss on certain projects because of unanticipated budget overruns; however, it was largely able to make up any losses on one contract from the profits of other contracts and projects. *Id.* at ¶ 16. At the outset of the COVID-19 pandemic, many projects were postponed and, thus, the Debtor was not being paid under those corresponding contracts. *Id.* In order for the Debtor to retain its employees and continue to operate, the Debtor sought out and was awarded new contracts. *Id.*

10. As the COVID-19 pandemic and related closures subsided, many of the Debtor's older, postponed contracts resumed. *Id.* at ¶ 17. The Debtor did not have the labor force necessary to handle the work required under the older contracts when combined with the demands of the new contracts. *Id.* This necessitated hiring additional employees. The Debtor's payroll went from less than 25 employees to, at one point, over 100 employees. *Id.* Problematically, labor costs had increased significantly since the time when the Debtor entered into the old contracts. *Id.* In addition, many of the new employees hired by the Debtor were less experienced, which required significant training, and thus, also were less efficient on all projects. *Id.* These labor costs and inefficiencies resulted in almost every project going over budget and led to significant losses for the Debtor. *Id.* at ¶ 17.

11. By the end of 2023, the Debtor had finished most of its pre-pandemic contracts. *Id.* at ¶ 18. The Debtor also made the decision to move away from accepting most subcontractor agreements and focused on contracts with the New York Metropolitan Transportation Authority where the Debtor would be the PEC. *Id.* This led to fewer contracts and projects being awarded

to the Debtor; however, the contracts that were awarded have been more profitable and a more stable revenue source. *Id.*

12. The Debtor continues to believe that the value of the business is strong and that, but for the challenges arising from COVID-19 and inefficiencies from expanding too quickly, it would not be facing the current financial distress. *Id.* at ¶ 9. The Debtor has determined that commencing this Chapter 11 case is the most effective way to address the mounting debts and preserve and maximize the Debtor's value for the benefit of its creditors and stakeholders. *Id.*

**BASIS FOR RELIEF**

13. Pursuant to Section 327 of the Bankruptcy Code, subject to the Bankruptcy Court's approval, the Debtor may employ attorneys, that do not hold or represent an interest adverse to the Debtor's estate and are disinterested persons, to represent and assist the Debtor in carrying out its duties under the Bankruptcy Code. 11 U.S.C. § 327(a).

14. Section 328 of the Bankruptcy Code, subject to the Bankruptcy Court's approval, authorizes the employment of professionals under Section 327 "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

15. Bankruptcy Rule 2014 and Local Rule 2014-1 require that applications for retention of professionals include, among other things, the name of the person to be employed, the reasons for the selection, the professional services anticipated to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor and parties in interest. Fed. R. Bankr. P. 2014(a) and Local Rule 2014-1(a).

**QUALIFICATIONS AND SERVICES TO BE RENDERED BY W&W**

16. The Debtor has selected W&W as its attorneys because of the firm's extensive general experience and knowledge, and in particular, its recognized experience in the field of debtors' and creditors' rights, business reorganizations under Chapter 11 of the Bankruptcy Code, and litigation involving tax controversies. Since being retained by the Debtor prior to this Chapter 11 filing, W&W has gained extensive familiarity with the Debtor's business, financial affairs, and property, as well as the claims that have been asserted against the Debtor. Accordingly, W&W has the necessary background to deal effectively with the potential legal issues and problems that may arise in the context of the Debtor's Chapter 11 case. The Debtor believes that W&W is both well-qualified and uniquely able to represent it in this Chapter 11 case in an efficient and expeditious manner. Vandermark Declaration, at ¶¶ 4-5.

17. The employment of W&W is necessary to enable the Debtor to faithfully execute its duties as debtor-in-possession and to develop, propose, and consummate a Chapter 11 plan, to sell its assets under 11 U.S.C. § 363, or to otherwise consummate an orderly liquidation. Subject to further order of this Court, it is proposed that W&W will be employed to:

(a) take all necessary action to protect and preserve the estate of the Debtor, including the prosecution of actions on the Debtor's behalf, the defense of any actions commenced against the Debtor, the negotiation of disputes in which the Debtor is involved, and the preparation of objections to claims filed against the estate;

(b) prepare on behalf of the Debtor, as debtor-in-possession, all necessary motions, applications, answers, orders, reports, and papers in connection with the administration of the estate;

(c) prosecute, on behalf of the Debtor, a proposed plan of reorganization or liquidation and all related transactions and any revisions, amendments, etc., relating to the same; and

(d) perform all other necessary legal services in connection with this Chapter 11 case.

*Id.* at ¶ 6.

**COMPENSATION AND REIMBURSEMENT**

18. As of the Petition Date, W&W is not a creditor of the Debtor. *Id.* at ¶ 7. During the ninety (90) day period prior to the commencement of this case, W&W received a retainer of $50,000 for professional services to be performed, including the commencement and prosecution of this chapter 11 case. *Id.* at ¶ 8. W&W has applied the retainer received to credit the Debtor's account for W&W's estimated charges for professionals' services performed and expenses incurred up to the Petition Date and has reduced the balance of the credit available to the Debtor by the amount of such charges. *Id.* at ¶ 9. W&W is current as of the Petition Date. *Id.* at ¶ 9. W&W may request additional compensation be paid from the Debtor's estates or other permissible sources subject to this Court's approval. *Id.* at ¶ 9.

19. Subject to Court approval in accordance with 11 U.S.C. § 330(a), W&W will seek compensation on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by W&W. *Id.* at ¶ 10. W&W's standard hourly rates as charged to bankruptcy and non-bankruptcy clients are as follows:

| | |
|---|---|
| Partners | $500-950 |
| Associates and Counsel | $350-825 |
| Legal Assistants | $165-295 |

*Id.* at ¶10.

20. W&W's hourly rates are subject to periodic adjustments to reflect economic and other conditions. *Id.* at ¶ 11. If at any time W&W increases the rates for it services in connection with the representation of the Debtor, W&W will file a supplemental affidavit with the Court

describing such increases and provide notice of such increase to the Debtor and the U.S. Trustee. *Id.* at ¶ 11.

21. W&W regularly charges its clients for reasonable expenses incurred by it in connection with representation of a client in a given matter. *Id.* at ¶ 12. Such expenses include, without limitation, travel costs, telecommunications, express or overnight mail, messenger services, photocopying costs, document processing, overtime meals, Lexis, Westlaw and other computer research-related expenses, court fees, transcript costs, and, in general, all identifiable expenses that would not have been incurred except for representation of a particular client. W&W intends to seek reimbursement for expenses incurred in connection with its representation of the Debtor in accordance with W&W's normal reimbursement policies, subject to any modifications to such policies that W&W may be required to make to comply with orders of the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and – to the extent consistent with the foregoing – the guidelines established by the US Trustee (the "**UST Guidelines**"). *Id.* at ¶ 12.

22. W&W intends to maintain detailed, contemporaneous time records and apply to the Bankruptcy Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any additional procedures that may be established by the Bankruptcy Court in this Chapter 11 case. *Id.* at ¶13. In addition, W&W has agreed to accept as compensation such sums as may be allowed by the Bankruptcy Court. *Id.* at ¶ 13. W&W understands that interim and final fee awards are subject to approval by the Bankruptcy Court. *Id.* at ¶ 13.

**DISINTERESTEDNESS OF W&W**

23. As described in detail in the Vandermark Declaration, W&W has conducted a search of its conflict database and has made other internal inquiries about connections with the Debtor and other parties in interest involved in this case. The Declaration sets forth the scope of the search and those inquiries and their results. *Id.* at ¶¶17-18.

24. To the best of the Debtor's knowledge, the partners and associates of W&W have not represented the Debtor, its creditors, or any other party in interest, or their respective attorneys and accountants, in any manner adverse to the Debtor or its estate. *Id.* at ¶20.

25. To the best of the Debtor's knowledge, W&W is a "disinterested person", as that phrase is defined in 11 U.S.C. § 101(14) and as modified by 11 U.S.C. § 1107(b), and W&W:

a. is not a creditor, equity security holder, or insider of the Debtor;

b. is not and was not, within two (2) years before the date of the filing of the petition, a director, officer, or employee of the Debtor; and

c. does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

*Id.* at ¶28.

26. W&W has agreed to review its files periodically during and at the conclusion of its employment in this Chapter 11 case to identify any additional connections and to the extent that any are discovered, will file a supplemental declaration setting forth the additional disclosures required by Bankruptcy Rule 2014(a).

27. The Debtor firmly believes that W&W is qualified to represent its interests and the interests of its estate. Were the Debtor required to retain attorneys other than W&W in connection with the prosecution of its Chapter 11 case, the Debtor, its estate and all parties in interest would be unduly prejudiced by the time and expense necessarily attendant to such alternate attorneys' need to familiarize themselves with the intricacies of the Debtor's circumstances and financial affairs.

## WAIVER OF STAY

28. To the extent applicable, the Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the Court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor seeks in this Application will assist the Debtor in preserving value for the estates and its creditors by providing the Debtor with counsel to support its duties and obligations as a debtor and debtor-in-possession in this case. Accordingly, the Debtor respectfully requests the Bankruptcy Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the need for the relief sought herein justifies immediate relief.

## NO PRIOR APPLICATION

29. No previous request for the relief sought herein has been made to this or any other court.

## NOTICE

30. Notice of this Application will be given to the Office of the United States Trustee for the District of the Eastern District of New York, the Subchapter V Trustee, the creditors on the list of the twenty (20) largest unsecured creditors, and all persons and entities that have requested

service in this Chapter 11 case pursuant to Bankruptcy Rule 2002. The Debtor submits that no further notice is required.

WHEREFORE, the Debtor respectfully requests entry of the annexed proposed order authorizing the Debtor to employ W&W as its attorneys in this case under Chapter 11 of the Bankruptcy Code and for such other and further relief as this Court may deem just and proper.

Dated: July 3, 2024

**IDL COMMUNICATIONS AND ELECTRIC, INC.**

*/s/ Paul Vieira*_________________________
Paul Vieira